Barry I. Levy (BL 2190)
Michael A. Sirignano (MS 5263)
Ryan Goldberg (RG 7570)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY and GEICO CASUALTY CO.,

           Plaintiffs,

  -against-

IOSIF ARONOV, M.D., and AP DIAGNOSTIC
MEDICAL, PC,

           Defendants.
-----------------------------------------------------------------X

Docket No.:

**Plaintiff Demands a Trial By Jury**

## COMPLAINT

  Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs"), as and for their Complaint against the Defendants, hereby allege as follows:

### NATURE OF THE ACTION

  1. This action seeks recovery of more than $291,000.00 that the defendants have wrongfully obtained from GEICO by submitting, and causing to be submitted, hundreds of fraudulent charges for radiology services (i.e., magnetic resonance imaging ("MRI") studies) that allegedly were rendered to individuals who were involved in automobile accidents and eligible

for insurance coverage under GEICO's insurance policies ("Insureds").  This action also seeks a declaration that GEICO is not legally obligated to pay Defendant, AP Diagnostic Medical, P.C. ("AP Diagnostic"), approximately $944,000.00 in pending claims for radiology services allegedly rendered to GEICO Insureds.   GEICO is entitled to such relief because:

    (i)    AP Diagnostic is a radiology practice owned "on paper" by a physician whose field of medicine is internal medicine, who does not practice radiology, and who has never engaged in the practice of medicine through AP Diagnostic and, therefore, was never eligible to recover No-Fault benefits; and

    (ii)    AP Diagnostic billed GEICO for radiology services that were performed by radiologists who were not employees of AP Diagnostic, but rather independent contractors of AP Diagnostic having no employment relationship to AP Diagnostic and, therefore, was never eligible to recover No-Fault benefits for these services;

2.    The Defendants fall into the following categories:

    (i)    AP Diagnostic is a fraudulently incorporated New York professional medical corporation through which the radiology services purportedly were performed and billed to insurance companies, including GEICO. AP Diagnostic is owned on "paper" by Iosif Aronov, M.D.;

    (ii)    Iosif Aronov, M.D. ("Dr. Aronov") is a physician who specializes in internal medicine, and is not a radiologist;

3.    The Defendants' scheme began in April 2009 and has continued uninterrupted since that time.  As discussed below, Defendants, at all relevant times, have known that (i) Dr. Aronov is not a radiologist and is therefore not competent to supervise the delivery of radiology services provided through AP Diagnostic; (ii) Dr. Aronov has never engaged in the practice of medicine through AP Diagnostic; and (iii) AP Diagnostic is not the direct provider of the radiology services as such services have been provided by independent contractors.  As such, AP Diagnostic never had any right to be compensated for the radiology services for which bills were submitted to GEICO and other insurers.

2

4. The chart annexed hereto as Exhibit "1" illustrates the fraudulent claims identified to-date that the Defendants have submitted, or caused to be submitted, to GEICO. As a result of the Defendants' fraudulent scheme, GEICO has been billed approximately $1,600,000.00 by AP Diagnostic since its inception and has incurred damages exceeding $291,000.00 in that same time period.

## THE PARTIES

### I. Plaintiff

5. Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co., are all Maryland corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue policies of automobile insurance in the State of New York.

### II. Defendants

6. Defendant AP Diagnostic is a New York professional service corporation with its principal place of business in New York. AP Diagnostic was fraudulently incorporated in New York on or about April 28, 2009. AP Diagnostic was originally incorporated as IOS Medical, P.C. A Certificate of Amendment changing the name was filed with New York State on November 9, 2009.

7. Defendant Dr. Aronov is a physician who specializes in internal medicine and who has been licensed to practice medicine in New York since June 7, 2005. Dr. Aronov resides in and is a citizen of the State of New York. Dr. Aronov serves as the owner of AP Diagnostic which purports to provide radiology services to GEICO insureds despite the fact that he is not a radiologist and incapable of competently reading and interpreting MRI studies. Dr. Aronov has

3

never engaged in the practice of medicine through AP Diagnostic since it was unlawfully incorporated on or about April 28, 2009.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

9. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Eastern District of New York is the District where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS COMMON TO ALL CLAIMS

I. **An Overview of the No-Fault Laws**

10. GEICO underwrites automobile insurance in the State of New York.

11. New York's No-Fault laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay for and receive the medically necessary healthcare services that they require. Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101 et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65 et seq.) (collectively referred to herein as the "No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") to Insureds.

12. No-Fault Benefits include up to $50,000.00 per Insured for necessary expenses incurred for health care goods and services.

13. An Insured can assign his or her right to No-Fault Benefits to the providers of healthcare services in exchange for those services. Pursuant to a duly executed assignment, a healthcare provider may submit claims directly to an insurance company and receive payment for necessary medical services rendered, using the claim form required by the New York State Department of Insurance (known as the "Verification of Treatment by Attending Physician or Other Provider of Health Service," or, more commonly, as an "NF-3").

14. Pursuant to the No-Fault Laws, fraudulently incorporated professional service corporations are not eligible to bill for or receive No-Fault Benefits. Similarly ineligible are professional service corporations that are owned by doctors who do not practice through the corporation.

15. The No-Fault Laws provide, in pertinent part:

> A provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet <u>any</u> applicable New York State or local licensing requirement necessary to perform such service in New York …. <u>See</u> 11 N.Y.C.R.R. § 65-3.16(a)(12) (emphasis provided).

16. In New York, only a licensed physician may: (i) practice medicine; (ii) own or control a professional service corporation authorized to practice medicine; (iii) employ and supervise other physicians; or (iv) derive economic benefit from physician services. Furthermore, under the No-Fault Laws, healthcare service providers are not eligible to receive No-Fault Benefits if they engage in fee splitting with non-medical professionals, conduct that is prohibited by New York's Education Law.

17. Additionally, New York law requires that the shareholders of a medical professional corporation be engaged in the practice of medicine through the professional corporation in order for it to be lawfully licensed. Under the No-Fault Laws, professional

5

service corporations are not eligible to receive No-Fault Benefits if they are owned by physicians who do not engage in the practice of medicine through the professional corporation.

18. Moreover, for a healthcare provider to be eligible to bill for and to collect charges from an insurer for healthcare services pursuant to N.Y. Ins. Law § 5102(a), it must be the actual provider of the service. Under the No-Fault Laws, a professional service corporation is not eligible to bill for services, or to collect for those services from an Insurer, where the services were rendered by persons who are not employees of the professional corporation, such as independent contractors.

19. Pursuant to § 403 of the New York State Insurance Law, the NF-3s submitted by a healthcare provider to GEICO, and to all other insurers, must be verified by the healthcare provider subject to the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

## II. AP Diagnostic's Ineligibility to Receive No-Fault Benefits

### A. Aronov's Failure to Practice Medicine Through AP Diagnostic

20. AP Diagnostic is owned by Dr. Aronov and purports to operate from 88-09 101st Avenue, Ozone Park, New York.

21. Beginning in or about April 2009, and continuing until the present day, the Defendants have masterminded and implemented a fraudulent scheme by using AP Diagnostic, to bill GEICO for radiology services that AP Diagnostic is not eligible to recover.

22. During the time that Dr. Aronov has been listed as the record owner of AP Diagnostic, Dr. Aronov has been working full time, practicing internal medicine at various practices located in Rego Park, New York and New Hyde Park, New York.

23. Dr. Aronov does not personally treat or provide radiology services to any patient of AP Diagnostic, and does not read or interpret any MRI studies for AP Diagnostic.

24. Dr. Aronov does not supervise any of the treatment or services allegedly provided to patients of AP Diagnostic. In fact, if the radiology technicians have any questions or issues they are advised to contact the individual who performs the reads and interprets the films, not Dr. Aronov.

25. Dr. Aronov does not supervise or train any of the radiologists that allegedly interpret the MRI studies of patients for AP Diagnostic.

26. Dr. Aronov does not sign any of the bills sent out under the AP Diagnostic name.

27. Dr. Aronov does not review any of the bills sent out under the AP Diagnostic name.

28. In fact, not a single one of the thousands of bills that have been submitted to GEICO for reimbursement by AP Diagnostic has been for services actually performed by Dr. Aronov. This is not surprising as Dr. Aronov is not a radiologist, he has not performed any medical work for AP Diagnostic and he spends his time practicing internal medicine at a practice unrelated to AP Diagnostic.

29. Additionally, Dr. Aronov does not sign the Assignment of Benefits Forms on behalf of AP Diagnostic. All Assignment of Benefits Forms are signed by the individual who purports to read the MRI films on behalf of AP Diagnostic, despite this individual is never present at the location.

30. Moreover, as a doctor practicing internal medicine, Dr. Aronov is not competent to either (i) interpret the MRI studies that are allegedly performed on GEICO Insureds, or (ii) supervise the interpretations of the MRI studies that are allegedly performed by the radiologists that are retained to work at AP Diagnostic.

31. Business Corporation Law §1507 makes clear that a physician shareholder of a medical professional corporation must be engaged in the practice of medicine through the professional corporation for it to be lawfully licensed. BCL § 1507 provides as follows:

> **Issuance of shares**
>
> A professional service corporation may issue shares only to individuals who are authorized by law to practice in this state a profession which such corporation is authorized to practice and who are or have been engaged in the practice of such profession in such corporation…or who will engage in the practice of such profession in such corporation within thirty days of the date such shares are issued….All shares issued, agreements made, or proxies granted in violation of this section shall be void.

32. Legislative history confirms that the physician must not only be licensed to practice but must also be engaged in the practice of medicine in a medical professional corporation. For example, in commenting on the proposed amendment to BCL § 1507 in 1971, the State Education Department, stated:

> This bill amends the Business Corporation Law in relation to the operation of professional service corporations. While this bill allows more flexibility in the ownership and transfer of professional service corporation stock, <u>it maintains the basic concept of restricting ownership to professionals working within the corporation</u>.

33. Similarly, the New York Department of State commented that:

> Section 1507 currently limits issuance of shares in such corporation to persons licensed by this State to practice the profession which the corporation is authorized to practice <u>and who so practice in such corporation or a predecessor entity</u>.

> The bill would add a third category of person eligible to receive stock, one who will practice such profession "within 30 days of the date such shares are issued."

34. New York's Department of Health was of the same opinion, commenting that:

> The bill would amend Article 15 of the Business Corporation Law pertaining to professional service corporations <u>to allow the issuance of shares of individuals who will engage in the practice of the profession within 30 days of the date such shares are issued, in addition to those presently so engaged</u>…. (Emphasis added.)

(Copies of the memoranda referenced in ¶¶ 32-35 above are collectively annexed to this Complaint as Exhibit "2.")

35. Dr. Aronov's failure to practice medicine through the professional corporation as well as his failure and/or inability to supervise any of the radiologists who perform the services compromises patient care and results in unnecessary testing.

### B. AP Diagnostic's Use of Independent Contractors

36. To be eligible for reimbursement under the No-Fault Laws, a professional corporation, as assignee, is entitled to payment from an insurer only if, *inter alia*, it is the actual, licensed provider of the health services billed for.

37. A health care provider's use of independent contractors, rather than employees, to provide health services renders the health care provider ineligible to receive reimbursement under the No-Fault Laws.

38. Pursuant to 11 N.Y.C.R.R. § 65-3.11(a), in order to be eligible for reimbursement under the No-Fault Laws, a professional corporation, as assignee, is entitled to payment from an insurer only if, <u>inter alia</u>, it is the actual, licensed provider of the billed-for services.

39. Pursuant to the No-Fault Laws, a health care provider's use of independent contractors, rather than employees, to provide health services renders the health care provider ineligible to receive reimbursement for those services.

40. Since 2001, the New York State Insurance Department consistently has reaffirmed its longstanding position that professional corporations are not entitled to receive reimbursement under the No-Fault Laws for healthcare providers performing services as independent contractors. See DOI Opinion Letter, February 21, 2001 ("where the health services are performed by a provider who is an independent contractor with the PC and is not an employee under the direct supervision of a PC owner, the PC is not authorized to bill under No-Fault as a licensed provider of those services"); DOI Opinion Letter, February 5, 2002 (refusing to modify position set forth in February 21, 2001, Opinion letter despite a request from the New York State Medical Society); DOI Opinion Letter, March 11, 2002 ("If the physician has contracted with the PC as an independent contractor, and is not an employee or shareholder of the PC, such physician may not represent himself or herself as an employee of the PC eligible to bill for health services rendered on behalf of the PC, under the New York Comprehensive Motor Vehicle Insurance Reparations Act."); DOI Opinion Letter, October 29, 2003 (extending the independent contractor rule to hospitals); See DOI Opinion Letter, March 21, 2005 (DOI refused to modify its earlier opinions based upon interpretations of the Medicare statute issued by the CMS). (Copies of the relevant DOI Opinion letters are annexed hereto as Exhibit "3.")

41. At all relevant times, the bills submitted by AP Diagnostic included charges for services where AP Diagnostic is not the direct provider of the healthcare services, but rather, the services were provided by an independent contractor.

42. At all relevant times, AP Diagnostic has not had any radiologist on staff who is a true, actual employee of AP Diagnostic.

43. On every bill submitted to GEICO by AP Diagnostic, Mark Shapiro, M.D. ("Dr. Shapiro") is identified as the "employee" who rendered the radiology services provided by AP

Diagnostic (i.e., review and interpretation of the radiology film). However, Dr. Shapiro is, upon information and belief, actually an independent contractor, and not employee, of AP Diagnostic.

44. Dr. Shapiro is no stranger to this type of scheme and arrangements. Dr. Shapiro was recently indicted in a $279 Million Dollar no-fault fraud scheme. The indictment alleges that Dr. Shapiro participated in a vast RICO criminal enterprise whereby non-professionals controlled medical clinics by paying licensed medical practitioners (including Dr. Shapiro to use their licenses to incorporate the professional corporations; paid kickbacks to runners who recruited automobile accident passengers to receive medically unnecessary treatments from the no-fault clinics; and instructed the clinic owners to prescribe excessive and unwarranted referrals for various "modality treatments" for every patient they saw. The masterminds were charged with RICO Conspiracy, Conspiracy to Commit Health Care Fraud, Conspiracy to Commit Mail Fraud and Conspiracy to Commit Money Laundering. Dr. Shapiro has been charged with Conspiracy to Commit Health Care Fraud and Conspiracy to Commit Mail Fraud. A copy of the Indictment is annexed hereto as Exhibit "4".

45. Neither Dr. Aronov nor anyone else on behalf of AP Diagnostic supervises Dr. Shapiro's services or evaluates his job performance.

46. Dr. Shapiro does not have set work hours or work days with respect to his work for AP Diagnostic.

47. Dr. Shapiro's review and interpretation of the MRI films is not done on-site in Ozone Park where AP Diagnostic is located.

48. Upon information and belief, Dr. Shapiro does not have a set rate of hourly pay and is, instead, paid by AP Diagnostic based on the number of films that he reads or interprets.

48. Moreover, Dr. Shapiro's services are not exclusive to AP Diagnostic. Dr. Shapiro

is listed as "owner" or "employee" for at least 13 other MRI facilities, including Doshi Diagnostic Imaging Services, P.C., Total Medical Rehab, P.C., Excel Imaging, P.C., Rockaway Medical And Diagnostic Imaging, P.C., Clearview of Brooklyn, P.C., KKM Medical Diagnostics, P.C., Pitkin Medical Diagnostics, P.C., Triboro Medical P.C., Ummah Medical Diagnostic P.C., Westchester Square Imaging Associates P.C., Yonkers Imaging P.C., United Diagnostic Imaging, P.C. (as purported "owner"), and Superior Diagnostic Imaging P.C. (as purported "owner").

49. Dr. Shapiro also has been named as a defendant and/or mentioned in a number of lawsuits involving MRI facilities and, inter alia, their improper attempts to bill for the services of independent contractors. In Travelers Indemnity Company v. United Diagnostic Imaging, P.C., CV 10-3620 (JBW), Travelers brought an action to recover payments made to United Diagnostic for services provided by Dr. Shapiro based on the fact that, inter alia, Dr. Shapiro was a full-time employee of Doshi Diagnostic Imaging Services, P.C., and merely worked as an independent contractor for United Diagnostic. Travelers' complaint alleged that United was a transient MRI "practice" with no medical office or imaging equipment of its own and no specific location from which it actually practiced or provided services but which engaged Dr. Shapiro as an independent contractor to read films.

50. Additionally, numerous facilities where Dr. Shapiro purported to provide services have been named as defendants in numerous actions commenced by insurance carriers based on similar fraudulent schemes to the one herein. For example, in GEICO v. Clearview of Brooklyn, P.C., CV 10-4286 (MDG), and GEICO v. Sander Koyfman, M.D., et al., CV 10-5869 (ENV), it was alleged that Clearview and KKM were fraudulently incorporated and that they attempted to bill for services that had been rendered by independent contractors (i.e. Dr. Shapiro).

51. All of the aforementioned are indicia supporting the conclusion that Dr. Shapiro is not an employee of AP Diagnostic, but rather, an independent contractor.

52. AP has Diagnostic billed GEICO for radiology services as if they were provided by an actual employee of AP Diagnostic so as to make it appear as if the services were eligible for reimbursement. Defendants' misrepresentations were consciously designed to mislead GEICO into believing that it was obligated to pay AP Diagnostic, when, in fact, it was not.

53. Although AP Diagnostic identifies Dr. Shapiro nominally as an actual employee of AP Diagnostic, in actuality, the defendants:

   (i)   Have paid Dr. Shapiro, either in whole or in part, on a 1099 basis rather than a W-2 basis;

   (ii)  Have establish an understanding with Dr. Shapiro that he is an independent contractor, rather than employee;

   (iii) Have paid no employee benefits to Dr. Shapiro;

   (iv)  Have failed to secure and maintain W-4 or I-9 forms for Dr. Shapiro;

   (v)   Have failed to withhold federal, state or city taxes on behalf of Dr. Shapiro;

   (vi)  Have required Dr. Shapiro to pay for his own malpractice insurance;

   (vii) Have failed to provide Dr. Shapiro with either unemployment or workers' compensation benefits; and

   (viii) Have filed corporate and payroll tax returns (e.g., Internal Revenue Service ("IRS") forms 1120 and 941) that represent to the IRS and to the New York State Department of Taxation that Dr. Shapiro is an independent contractor.

54. By electing to treat Dr. Shapiro as an independent contractor, the Defendants realize significant economic benefits – for instance:

   (1) avoiding the obligation to collect and remit the income tax owed by Dr. Shapiro as required by 26 U.S.C. § 3102;

      (ii)      avoiding payment of the FUTA excise tax required by 26 U.S.C. § 3301;

      (iii)     avoiding payment of the FICA excise tax required by 26 U.S.C. § 3111;

      (iv)     avoiding payment of workers' compensation insurance to cover Dr. Shapiro as required by New York Workers' Compensation Law § 10;

      (v)      avoiding the need to secure any malpractice insurance to cover Dr. Shapiro; and

      (vi)     avoiding claims of agency-based liability arising from Dr. Shapiro's work.

55. Because AP Diagnostic is not the direct provider of the healthcare services that were billed to GEICO, as the services provided were rendered by an independent contractor, AP Diagnostic was ineligible to receive reimbursement for those services under the No-Fault Laws. Accordingly, GEICO is entitled to recover from Defendants all monies paid by GEICO to AP Diagnostic pursuant to the No-Fault Laws for any and all services not performed by actual employees of AP Diagnostic.

### III.  The Fraudulent NF-3 Forms Submitted to GEICO

56. To support the fraudulent radiology charges, statutorily prescribed claim forms for No-Fault Benefits (i.e., the NF-3 Form) have been consistently submitted to GEICO by and on behalf of the Defendants since April 2009 seeking payment for services for which AP Diagnostic is ineligible to receive payment.

57. The NF-3 forms submitted to GEICO, by and on behalf of AP Diagnostic, are false and misleading in the following material respects:

      (i)      The NF-3 forms uniformly misrepresented to GEICO that AP Diagnostic was lawfully licensed and, therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law §5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12). In fact, AP Diagnostic was not properly licensed in that it is a medical professional corporation that is owned by a physician that did not

actually practice medicine through the professional corporation and was not capable of doing so.

(ii) The NF-3 forms uniformly misrepresented to GEICO that AP Diagnostic was the direct provider of the healthcare services and that the services were provided by employees, and, therefore, AP Diagnostic was eligible to receive No-Fault Benefits pursuant to Insurance Law §5102(a)(1) and 11 N.Y.C.R.R. §65-3.16(a)(12). In fact, AP Diagnostic' services were provided by an independent contractor having no genuine employment relationship with AP Diagnostic, rendering it ineligible to receive reimbursement for those services under the No-Fault Laws.

### IV. The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance

58. The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the radiology services and the submission of charges to GEICO.

59. To induce GEICO to promptly pay the fraudulent charges for the radiology services, the Defendants have systemically concealed their fraud and have gone to great lengths to accomplish this.

60. Specifically, they knowingly have misrepresented and concealed facts related to AP Diagnostic in an effort to prevent discovery that the professional service corporation was unlawfully incorporated. In addition, Defendants knowingly have misrepresented and concealed facts related to the employment status of the radiologist who actually rendered the services in an effort to prevent discovery that this individual was not a genuine employee of AP Diagnostic.

61. The Defendants have hired one or more attorneys to pursue collection of the fraudulent charges from GEICO and other insurers. These attorneys routinely file expensive and time-consuming litigation against GEICO and other insurers if the charges are not promptly paid in full.

62. GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $291,000.00 based upon the fraudulent charges representing payments made by GEICO to AP Diagnostic since April 2009.

63. Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraud from GEICO, GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

## AS AND FOR THE FIRST CLAIM FOR RELIEF
### Against All Defendants
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

64. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 63 above.

65. There is an actual case in controversy between GEICO and the Defendants regarding approximately $944,000.00 in fraudulent billing for radiology services that has been submitted to GEICO.

66. AP Diagnostic has no right to receive payment for any pending bills submitted to GEICO because AP Diagnostic is owned "on paper" by an internist who has never engaged in the practice of medicine through the professional corporation and, therefore, ineligible to seek or recover No-Fault benefits;

67. AP Diagnostic has no right to receive payment for any pending bills because the radiologist who actually rendered the services billed for is an independent contractor who has no genuine employment relationship with AP Diagnostic.

16

68. Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that:

(i) AP Diagnostic is owned on paper by a physician who has never engaged in the practice of medicine through the professional corporation, thus rendering AP Diagnostic ineligible to seek or recover No-Fault benefits; and;

(ii) AP Diagnostic improperly bills for services provided by a radiologist who is an independent contractor and not a true employee of AP Diagnostic, thus rendering AP Diagnostic ineligible to seek or recover No-Fault benefits for these services.

## AS AND FOR THE SECOND CLAIM FOR RELIEF
### Against All Defendants
### (Common Law Fraud)

69. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 68 above.

70. The Defendants made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills seeking payment for radiology services.

71. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that AP Diagnostic is properly licensed and, therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is owned on paper by a physician who never engaged in the practice of medicine through the professional corporation; and (ii) in every claim, the representation that the services provided by AP Diagnostic were provided by genuine employees of AP Diagnostic, when, in fact, AP Diagnostic's radiology services are provided by an independent contractor.

72. The Defendants made false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted by Defendants that were not compensable under the No-Fault Laws.

73. GEICO justifiably relied on the Defendants' false and fraudulent representations, and as a proximate result has incurred damages of more than $291,000.00 based upon the fraudulent charges.

74. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

75. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### AS AND FOR THE THIRD CLAIM FOR RELIEF
### Against All Defendants
### (Unjust Enrichment)

76. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 75 above.

77. As set forth above, the Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

78. When GEICO paid the bills and charges submitted by or on behalf of AP Diagnostic for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

79. The Defendants have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

80.   The Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

81.   By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $291,000.00.

## JURY DEMAND

82.   Pursuant to Federal Rule of Civil Procedure 38(b), GEICO demands a trial by jury.

**WHEREFORE**, Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co., demand that a Judgment be entered in their favor and against the Defendants, as follows:

A.   On the First Cause of Action against all defendants, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that AP Diagnostic has no right to receive payment for any pending bills submitted to GEICO;

B.   On the Second Cause of Action against all Defendants, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $291,000.00, together with punitive damages, costs, and interest;

C.   On the Third Cause of Action against all Defendants, an award to GEICO of an amount to be determined at trial by which Defendants have been unjustly enriched, but in excess of $291,000.00, plus costs and interest; and

D.   such other and further relief as this Court deems just and proper.

Dated:     Uniondale, New York
           August 14, 2012

                                RIVKIN RADLER LLP

                                By: _____
                                    Barry I. Levy (BL 2190)
                                    Michael A. Sirignano (MS 5263)
                                    Ryan Goldberg (RG 7570)
                              926 RXR Plaza
                              Uniondale, New York 11556-0926
                              Telephone:   (516) 357-3000
                              Facsimile:    (516) 357-3333

                              *Counsel for Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co.*

2608879 v3